The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| UNITED STATES OF AMERICA, | NO.  2:18-cr-00132-RAJ |
|---|---|
| Plaintiff, | |
| v. | ORDER ON DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE |
| JOSEPH LEE WILSON, | |
| Defendant. | |

**I. BACKGROUND**

This matter comes before the Court on Defendant Joseph Lee Wilson's motion for compassionate release.  Dkt. 819.  Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby **DENIES** the motion for the reasons explained herein.

Following a lengthy investigation and indictment involving several other defendants, Mr. Wilson was charged with conspiracy to traffic controlled substances, drug trafficking, and related firearms offenses.  On June 14, 2019, he pled guilty to Conspiracy to Distribute Controlled Substances, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) and 846, and Carrying a Firearm During and in Relation to a Drug Trafficking Crime in violation of 18 U.S.C § 924 (c)(1)(A) and 2.  Dkt. 532.

On October 25, 2019, the Court sentenced Mr. Wilson to 72 months of incarceration, to be followed by three years of supervised release. Dkt. 671. He is currently housed at Federal Correctional Institution Lompoc and is scheduled to be released on July 17, 2023.

On July 20, 2020, Mr. Wilson filed the instant motion requesting compassionate release and a sentence reduction to time served. Mr. Wilson argues that his underlying chronic medical conditions place him at risk of serious complications after having contracted coronavirus-19 (COVID-19) while incarcerated, that FCI Lompoc is unable to provide a safe environment for him to recover, and that his race is an additional risk factor for complications from the disease. Dkt. 819.

The government opposes the motion, responding that Mr. Wilson has not provided reasons that would support a finding by this Court that extraordinary and compelling circumstances exist to warrant his early release, and that Mr. Wilson has failed to establish he no longer poses a danger to others and the community. Dkt. 825.

## II. DISCUSSION

### A.   Legal Standard for Compassionate Release

18 U.S.C. § 3582(c)(1)(A) allows a court to reduce a term of imprisonment if "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." The Sentencing Commission's policy statement, in turn, says that a court may reduce a term of imprisonment if "the defendant is not a danger to the safety of any other person or to the community" and "extraordinary and compelling reasons warrant such a reduction." United States Sentencing Guidelines ("USSG") § 1B1.13. The policy statement clarifies that such reasons exist when (1) "the defendant is suffering from a terminal illness" or (2) "the defendant is suffering from a serious physical or mental condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to

recover." USSG § 1B1.13 cmt. n.1. The policy statement also directs a court to consider the factors set forth in 18 U.S.C. § 3553(a) in deciding whether compassionate release is appropriate and what form compassionate release should take. USSC § 1B1.13 cmt. n.4.

Mr. Wilson's motion seeks a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018. As amended, § 3582(c)(1)(A) permits an inmate, who satisfies certain statutorily mandated conditions, to file a motion with the sentencing court for "compassionate release." As relevant to Mr. Wilson's motion, the statute now provides:

> (c) Modification of an imposed term of imprisonment. --The court may not modify a term of imprisonment once it has been imposed except that--
>
> (1) in any case--
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
>
> (i) extraordinary and compelling reasons warrant such a reduction;
>
> . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

The relevant statute gives this Court authority to reduce a previously imposed sentence if three requirements are satisfied: (1) the inmate has either exhausted administrative review of the Bureau of Prison's failure to bring such a motion, or waited until 30 days after the request was made to the warden where the inmate is housed if that is earlier; (2) the inmate has presented extraordinary and compelling reasons for the

requested reduction; and (3) the reduction is consistent with the Sentencing Commission's policy statement.

### B.   Exhaustion of Administrative Remedies

Mr. Wilson has met the exhaustion requirement.  While it is not clear when Mr. Wilson submitted a request for compassionate release to the warden at FCI Lompoc, his request was denied by the acting warden on May 26, 2020.  Dkt. 819, Ex. 1.  As the statutorily required 30-day period has expired, Mr. Wilson's motion is properly before the Court.

### C.   Extraordinary and Compelling Circumstances.

The Court must next determine if extraordinary and compelling circumstances warrant a reduction of Mr. Wilson's term of imprisonment.  *See* 18 U.S.C. § 3582(c)(1)(A)(i); USSG § 1B1.13.

The policy statement referenced in § 3582(c)(1) was promulgated by the Sentencing Commission pursuant to the authority Congress vested in it in 28 U.S.C. § 994. That statute provides:

> The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.

28 U.S.C. § 994(f).

Consistent with this statute, the applicable policy statement can be found at Section 1B1.13 of the United States Sentencing Guidelines. That statement provides:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that--

> (1)(A) Extraordinary and compelling reasons warrant the reduction…
>
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. 3142(g); and
>
> (3) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (4) The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13 (2019).

In the commentary, the Commission goes on to explain what constitutes "extraordinary and compelling reasons" to support a reduction in sentence. Specifically, Application Note 1 provides that extraordinary and compelling reasons exist if the defendant is suffering from a serious physical or medical condition…that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt.n.1.

On May 7, 2020, Mr. Wilson contracted COVID-19 while incarcerated at FCI Lompoc. Dkt. 821, at 81. Mr. Wilson contends he suffers from long-standing chronic underlying medical conditions that elevate his risk for severe complications from having already contracted COVID-19, including lingering pain, discomfort, and lung weakness from a 2017 automobile accident in which he sustained a broken neck, a fractured spine, a collapsed lung, and broken ribs. Dkt. 819, PSR ¶ 126. He indicates he has suffered from gout since 2015. Dkt. 819, PSR ¶ 127. Mr. Wilson's half-sister, who was interviewed at the time of preparation of the Presentence Report for sentencing, indicated she believed Mr. Wilson had high blood pressure. Dkt. 819, PSR ¶ 128.

When Mr. Wilson arrived at FCI Lompoc after being sentenced in late 2019, he states that other health issues were documented by medical providers at the facility, including post-traumatic stress syndrome and arthropathy in his spine as lingering conditions from his 2017 auto accident. Dkt. 819.

Mr. Wilson indicates these symptoms remain present and have even worsened since he has been deemed recovered from COVID-19.  He claims he has chronic fatigue, chest pain, shortness of breath, weakness in his legs, persistent high blood pressure, and prediabetes.  Dkt. 821, at 17 and 22.  Mr. Wilson has indicated to his counsel he is experiencing dizziness, severe fatigue, prostate issues, shortness of breath, and chest pains, evidencing the continued effects of having contracted COVID-19.  Dkt. 819.

Mr. Wilson argues that the extent of the COVID-19 outbreak at FCI Lompoc, which has resulted in a federal class action lawsuit and issuance of injunctive relief against the facility, is evidence the medical staff and administrators at FCI Lompoc are unable to adequately treat his medical conditions, and cannot provide the safe and sanitary environment necessary for his recovery from COVID-19.  Dkt. 819.

Finally, Mr. Wilson maintains that as a Black man, the data from the Centers for Disease Control and Prevention (CDC) indicate he is at greater risk than a similarly situated non-minority to require hospitalization for COVID-19.  Dkt. 819.  While Mr. Wilson raises his race as a factor for consideration, other than this reference, he provides no evidence on this issue for the Court's consideration.

In response, the government argues Mr. Wilson has failed to establish that the risks of COVID-19 are an extraordinary and compelling reasons for the early termination of his custodial sentence.  The government indicates that while Mr. Wilson did test positive for COVID-19 on May 7, 2020, his medical records dating from May 8, 2020, to May 22, 2020, indicate he did not have a high fever and that he denied having a cough, headache, fatigue, and shortness of breath, the recognized symptoms of COVID-19.  Dkt. 821, at 64-65.  By May 22, 2020, the records reflect that his COVID-19 had resolved.  *Id*. at 23.  The government argues Mr. Wilson selectively relies on his medical records when they confirm he recently reported shortness of breath, but challenges the accuracy of the records when they indicate he did not have many COVID-19 symptoms.  The government reasons that given Mr. Wilson survived COVID-19 without requiring

1   hospitalization, this suggests he is not at risk of suffering the most severe consequences
2   of having contracted COVID-19.  Dkt. 825.

3   The government further contends Mr. Wilson has not provided evidence that he
4   suffers from any of the chronic medical conditions the CDC recognizes as putting people
5   at increased risk of severe illness from COVID-19.  The government indicates Mr.
6   Wilson has been treated for the effects from his 2017 car accident, gout, prediabetes,
7   post-traumatic stress disorder, and a benign skin condition, none of which are considered
8   risk factors by the CDC.  Dkt. 821, at 22.  While acknowledging that the CDC has
9   indicated Mr. Wilson's at-times elevated blood pressure might be a risk factor, the
10  government argues that particular risk has not manifested in Mr. Wilson, as he was able
11  to recover from COVID-19 without hospitalization.  Dkt. 825.

12  The government argues that, in sum, Mr. Wilson's medical records provide
13  evidence that he suffered a mostly asymptomatic case of COVID-19 that resolved after
14  two weeks, that the Bureau of Prisons (BOP) provided him with medical care both before
15  and after his COVID-19 diagnosis, and that there's no indication that any of his other
16  claimed medical conditions place him at greater risk of severe complications from
17  COVID-19.  Dkt. 825.

18  The government concedes Mr. Wilson is incarcerated at a BOP facility that has
19  experienced an outbreak of COVID-19 and provides evidence of the efforts that have
20  been made at FCI Lompoc to test, screen, and control the spread of the virus.  The
21  government disputes Mr. Wilson's claim that he is not receiving medical care, pointing to
22  the records provided by the BOP to the contrary, indicating Mr. Wilson's conditions are
23  regularly being evaluated and addressed.  Dkt. 825.

24  Mr. Wilson argues in reply that his medical records from the BOP are not accurate
25  and are incomplete.  He indicates the medical conditions he suffered before he contracted
26  COVID-19 might have placed him in a weakened condition which may have made him
27  more susceptible to the virus and more likely to suffer long-term consequences of the
28  disease.  He contends his high blood pressure continues to be a risk to his health if he

remains incarcerated, and indicates the government is downplaying his high blood pressure as a risk factor of COVID-19.  Dkt. 828.

When an inmate has health conditions that make them significantly more vulnerable to COVID-19, that likewise may constitute an extraordinary and compelling circumstance.  *See e.g., United States v. Cosgrove,* Case No. CR15-0230-RSM, -F. Supp. 3rd-, 2020 WL 1875509 (W.D. Wash. April 15, 2020; *United States v. Dorsey,* Case No. CR16-0138-BLW-JCC, 2020WL 2562878 (W.D. Wash. May 19, 2020).

While some courts have held, as argued by the Government, that the Sentencing Commission's policy statement on compassionate release remains controlling in the wake of the First Step Act, this Court agrees with the position taken by numerous courts that the "old policy statement provides helpful guidance, [but]…does not constrain [a court's] independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3852(c)(1)(A)."  *United States v. Cosgrove, Id.; United States v. Rodriguez*, 2020 WL 1627331, (E.D. Penn. Apr. 1, 2020; *United States v. Almontes,* 2020 WL 1812713 (D. Conn. Apr. 9, 2020); *United States v. Haynes,* No. 93 CR1043 (RJD), 2020 WL 1941478 (E.D. N.Y. Apr. 22, 2020); and *United States v. Maumau,* No. 2:08-cr-00758-TC-11, 2020 WL 806121 (D. Utah, Feb. 18, 2020).

Mr. Wilson has placed much weight on the class action litigation currently being litigated regarding the facility where he is being housed.  The government does not dispute that the COVID-19 pandemic poses a serious threat to public health, but the Court agrees that in light of the medical records in evidence, Mr. Wilson has failed to provide evidence that the virus poses an extraordinary and compelling reason for his health warranting his release.  Moreover, even in that litigation, the Court did not immediately release the petitioners.  Rather, the Court directed the Respondents to make prompt determinations of the eligibility of home confinement and compassionate release as to Lompoc inmates who were at higher risk for severe illness or death from COVID-19.  Dkt.  819, at 58. This Court does not find that Mr. Wilson fits in that category based upon the record submitted.

Mr. Wilson challenges whether his medical records are accurate. The Court agrees with the government as to Mr. Wilson's criticism of his medical records. When they indicate that he did not have many COVID-19 symptoms, he disagrees, but he confirms the accuracy when they support his position. Dkt. 825, p. 11-12. Despite these inconsistencies, Mr. Wilson appears to have recovered from the virus. This was accomplished without hospitalization or advanced treatment suggesting he is not at risk of suffering the most severe effects of COVID-19. The record is also devoid of any evidence to suggest that his history of overcoming COVID-19 puts him at higher risk of severe illness from any reoccurrence of the virus.

Mr. Wilson has also listed a host of conditions that are documented in the medical records. These include treatment for gout, elevated blood pressure, prediabetes, post-traumatic stress disorder, effects from a previous car accident, and a benign skin neoplasm. Dkt. 821, at 22. None of these conditions match the eight factors the CDC has listed that put people of any age at greater risk of severe illness from COVID-19. *See* People of Any Age with Underlying Conditions, Centers for Disease Control and Prevention, https:/www.cc.gov/coronavirus/2019-ncov/need-estra-precautions/people -with-medical-onditions.html (July 22, 2020).

As to Mr. Wilson's hypertension claim, at best, the CDC has only concluded to date that it might be a risk factor. This contention alone is not sufficient to justify or warrant conclusion that Mr. Wilson's risks of COVID-19 warrant an extraordinary and compelling reason for early termination of his sentence.

**D. Safety of Others and 18 U.S.C. §3553 (a) Factors**

The Court next turns to whether Mr. Wilson presents a danger to the safety of any other person or to the community. *See* U.S.S.G. §1B1.13(2). In making this determination, the Court looks to the nature and circumstances of the underlying offense, the weight of evidence against him, his history and characteristics, and the nature and seriousness of the danger his release would pose to any person or the community.

18 U.S.C. §3142(g). The Court may not reduce a defendant's sentence unless it finds that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."

While conceding he has a significant criminal history, Mr. Wilson points out that his last felony conviction before the instant offense occurred over fifteen years ago. While acknowledging he has a conviction relating to a firearm, he claims he has never used a firearm to threaten or hurt anyone. Dkt. 819.

The government argues Mr. Wilson's lengthy criminal history, the nature of his convictions, the nature of his current offense, and his repeated possession of firearms preclude a finding that Mr. Wilson is no longer a danger, and that nothing about the current global COVID-19 pandemic reduces his danger to others and to the community. Dkt. 825.

Even if this Court had determined that Mr. Wilson had established extraordinary and compelling reasons to make him eligible for a reduction in his sentence, the Court would not exercise its discretion to do so here.

While much of Mr. Wilson's criminal history is dated, his conduct in the instant case warrants continued concern over his danger to the community. Mr. Wilson was involved in a large drug conspiracy and was involved in the distribution of kilogram quantities of cocaine. He was repeatedly armed throughout the conspiracy, he was stopped in a car carrying a firearm in early 2017, and he had a gun when he was arrested in his home in June 2018.

In addition, Mr. Wilson has repeated violations of the conditions of supervision for failing to report, failing to complete required treatment, and using illegal drugs. These violations and the totality of his criminal conduct demonstrate that Mr. Wilson is a danger to the safety of the community as reflected in Title 18 U.S.C. §3142 (g).

Finally, with respect to avoiding sentencing disparities, given the number of defendants in this very large drug trafficking conspiracy, the government acknowledges the effort this Court made to distinguish among the many defendants, imposing different

sentences as the circumstances warranted.  The government distinguishes Mr. Wilson from other defendants in this conspiracy who have brought compassionate release motions, indicating the Court has denied others, largely on the same grounds brought here.  The government further distinguishes Mr. Wilson from his co-defendant Edward Deandre Locke, whose motion for compassionate release this Court granted, indicating Mr. Locke had numerous longstanding health conditions, many of which have been identified by the CDC as increasing his risk of serious complications from COVID-19, and the fact that Mr. Locke was on pretrial release and complied with the conditions of that release for more than 18 months.  Dkt. 825.  The Court adopts the government's analysis on this consideration.  Hence, no disparity in sentencing will occur with this denial or in consideration of other defendants who have been granted or denied release.

### III.  CONCLUSION

For the foregoing reasons, Defendant Joseph Lee Wilson's motion for compassionate release is **DENIED**.

DATED this 20th day of August, 2020.

	*Richard A. Jones*
	The Honorable Richard A. Jones
	United States District Judge